MATTER OF M/T "DONA MARIA"

- In Fine Proceedings

LOS-10/2.141

*Decided by Board May 2, 1966*

Where an alien crewman, inspected and denied conditional landing privileges upon arrival, was subsequently reported missing from the ship by the master of the vessel and was so reported on the departure manifest, liability to fine lies under section 254(a)(2), Immigration and Nationality Act, for failure to detain the crewman aboard the vessel, absent a showing by the carrier that an illegal landing was not made by the crewman.

IN RE: M/T "DONA MARIA," which arrived at the port of Los Angeles, California, from foreign, on May 23, 1964. Alien crewman involved: Wing Piu Ko

BASIS FOR FINE: Act of 1952—Section 254(a)(2) [8 U.S.C. 1284]

This appeal is directed to an administrative penalty of $500, $1000 mitigated to the extent of $500, which the District Director at Los Angeles has ordered imposed on the vessel's agents, Lilly Shipping Agencies, and/or its Master, Frederick W. Ridley, for failure to detain the above-named alien crewman aboard the vessel at all times despite the fact that he had not been granted conditional landing privileges.

It appears from the record before us that the following material facts exist without substantial controversy. Immigration inspection was accorded the crew of this vessel immediately upon its arrival from foreign, *ante*. As a result, 46 alien crew members, including the one named above, were denied conditional landing privileges. However, on May 26, 1964, at 11:30 p.m., the Master of the vessel reported that the above-named alien crewman was missing from the ship. A search of the vessel by the ship's officers and crew failed to produce the missing crewman. The vessel sailed foreign at 12:30 p.m. on May 27, 1964. The manifest (Form I-418) submitted for that departure reported the crewman as not on board.

The carrier asserts that while the vessel was anchored about a mile offshore at El Segundo, California, this alien crewman left the ship

and endeavored to swim ashore. It asserts that to its knowledge he never landed in this country. It claims that it has no reason to believe that he has been seen alive since he was found missing from the ship. It argues that it is as reasonable to assume that he drowned attempting to swim ashore as it is to conjecture that he landed in the United States. It contends that no fine should be imposed, on the theory that an illegal landing is essential to a violation of this section of the law and that none has been established here.

Excerpts from records of the El Segundo Police Department, to which department this crewman's escape was reported, contain evidence indicating that the crewman in question may actually have succeeded in reaching the shore. But regardless of whether he did or not, the appellant's argument in this respect overlooks the provisions of subsection (b) of section 254 of the Immigration and Nationality Act, which provide that:

Proof that an alien crewman did not appear upon the outgoing manifest of the vessel * * * on which he arrived in the United States * * * or that he was reported by the Master or Commanding Officer of such vessel * * * as a deserter, shall be *prima facie evidence* of a failure to detain or deport such alien crewman. (Emphasis supplied.)

Here, the crewman was missing from the ship and so reported, including on the departure manifest. These factors bring into play subsection (b) of the statute. That being the case, under the law the carrier then had the burden of proceeding to show that an illegal landing was not made by the crewman. Absent same, the fine lies.

If, as pointed out by the Service, it had the burden of producing the corpus delicti before it could institute fine proceedings, then the Congressional purpose of providing for close control over crewmen would be frustrated in many, if not most, cases. The wording of the statute supports the Service in this respect. If, on the other hand, the carrier's claim that the crewman jumped overboard and unsuccessfully attempted to swim ashore is ultimately established, then the carrier has an appropriate remedy by way of a motion for reconsideration.

The only remaining issue is whether more mitigation than has already been authorized by the District Director ($500) is warranted in these premises and, if so, how much. In this connection, two professional guards per shift were on duty on an around-the-clock basis to guard the detainees aboard this vessel, both while it was docked and while it was finishing its loading a mile offshore. The District Director has indicated in his opinion that the Master and the agents of this vessel did attempt diligently to detain the crew-

man on board the vessel at all times. Said official has also indicated in his opinion that said parties did cooperate in an attempt to locate the escapee after his desertion. The record before us adequately establishes continuing efforts on their part to the end that the escapee's apprehension and/or location might be effected. Accordingly, and in view of the unusual circumstances presented by this case, it is our considered opinion that $300 more mitigation is merited. That is, we feel that maximum mitigation permissible under the statute is merited in these premises.

**ORDER:** It is ordered that the District Director's decision of February 10, 1966, be modified to provide for $300 additional mitigation, and that as so amended the decision of said official be and the same is hereby affirmed. The penality permitted to stand is $200.